UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| LETECIA D. BROWN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-1802-RLY-TAB |
| | ) | |
| AUTOMOTIVE COMPONENTS | ) | |
| HOLDINGS, LLC, VISTEON | ) | |
| CORPORATION, and FORD MOTOR | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff is a former employee of Ford Motor Company ("Ford" or "Defendants"),[1]

who was terminated on September 11, 2006, for her alleged violations of Ford's medical

leave and absentee policies.  Plaintiff thereafter filed the present lawsuit.  In her Amended

Complaint, Plaintiff alleges that she was the victim of sexual harassment and was

retaliated against for engaging in protected expression in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Plaintiff further alleges that her

termination interfered with her alleged rights under 29 U.S.C. § 2601 *et seq.*, the Family

---

[1] ACH is a limited liability company that owns the Indianapolis Plant ("Plant"), which
was acquired from Visteon Corporation on or around October 1, 2005.  ACH does not have any
of its own employees within the United States and has never employed Plaintiff.  All of the
employees at the Plant are hourly and/or salaried employees of Ford or salaried employees of
Visteon.  Plaintiff was an hourly employee of Ford at the time of her termination.  Since this case
has been filed against all three parties, however, the court will refer to the parties collectively as
"Defendants."

1

Medical Leave Act ("FMLA").  Plaintiff's sexual harassment claim has since been

dismissed, and, with respect to Plaintiff's retaliation claim, Plaintiff concedes that her

claim is legally without merit.  Thus, the only claim remaining in this lawsuit is Plaintiff's

FMLA interference claim.  Defendants now move for summary judgment on this claim.

For the reason set forth below, the court **DENIES** Defendants' Motion.

**I.** **Facts**

The following facts are taken in the light most favorable to the Plaintiff:

**A.** **Plaintiff's Employment at the Plant**

1. Plaintiff began working as an hourly employee of Defendants on December 7, 1998. While employed at Ford, she held the positions of Assembly Job Setter Ball Nut or Assembler-Job Setter until she was terminated.  (Deposition of Letecia Brown ("Plaintiff Dep.") at 26, 29, 59).

2. As an hourly worker, Plaintiff was subject to the terms of the Collective Bargaining Agreements ("CBA") with the United Auto Workers ("UAW"). (Deposition of Marsha McKeon ("McKeon Dep.") at 59).

3. Plaintiff was given copies of the Plant's medical benefits and policies, as well as the UAW agreements and amendments.  (Plaintiff Dep. at 31).

4. According to Plaintiff, none of the UAW agreements or amendments were modified or changed prior to her termination.  (Plaintiff Dep. at 31-32).

5. According to Plaintiff, the Plant's medical leave policies, in effect and given to Plaintiff during her orientation, remained unchanged prior to her termination.

(Plaintiff Dep. at 35).

**B.      Plant Procedures for Medical Leaves and Medical Leave Extensions**

6.     The Plant Medical Clinic ("Clinic") provides treatment for occupational issues and

administers medical leaves of absence.  (Deposition of Angela Diguilio ("Diguilio

Dep.") at 8, 9).

7.     Angela Diguilio ("Diguilio") is an independent contract employee from Methodist

Occupational Health who has worked in the Clinic as the Administrative Medical

Assistant since April of 2004.  Her job duties include administering the medical

leave process and the FMLA process.  (Diguilio Dep. at 7-9).

8.     When employees come into the Clinic to open medical leaves, Diguilio gives them

a Form 5166 to take to their doctor, as well as a copy of the Plant's policy

regarding medical leaves.  (Diguilio Dep. at 19).

9.     The instruction and policy paperwork given to employees approved for a medical

leave of absence by the Clinic provides, in part:

> **REMEMBER** – Your Medical Leave expires on this date,
> [sic] if a 5166 is not rec'd by this date, or you have not
> returned to work, you will be considered AWOL which will
> result in you receiving a 5 day quit notice. Questions
> regarding 5 day quit notice should be directed to Hourly
> Personnel.
>
> IF YOUR 5166 IS FAXED OR MAILED, YOU WILL
> NEED TO CALL THE MEDICAL DEPARTMENT TO BE
> SURE YOUR FORM WAS RECEIVED & HAS ALL THE
> INFORMATION ON IT THAT IS REQUIRED.
> INCOMPLETE FORMS WILL NOT BE ACCEPTED.  IF IT
> IS FAXED, THE ORIGINAL FORM IS STILL REQUIRED

> TO BE TURNED IN TO THE MEDICAL DEPT. *NOTES OTHER THEN [SIC] 5166 WILL <u>NOT</u> BE ACCEPTED*.
>
> **REMEMBER – YOUR MEDICAL WILL BE CONSIDERED <u>NOT</u> JUSTIFIED & YOU WILL BE CODED AS AWOL IF THE 5166 IS NOT REC'D BY ABOVE DATE**.

(Defendants' Ex. 10).

10. The medical leave of absence paperwork given to each employee who takes a personal medical leave of absence also includes the following statement in the second bullet point on page A3:

> You must submit a completed 5166 to justify your medical condition prior to the ending date of your medical leave. (This is also the case if an extension is required beyond the current ending date). If this is not done, your medical will be considered not justified & you will be coded as AWOL.

(Diguilio Dep. at 27; Defendants' Ex. 11).

11. Plaintiff received copies of these policies and knew that these were the policies to initiate and/or extend a medical leave. (Plaintiff Dep. at 123-26).

12. The Clinic "preferred" that a Form 5166 be completed by an employee's health care provider in order to extend her medical leave of absence – even by one day. If, however, Form 5166 "could not be completed fast enough," a doctor's note was sufficient to extend a medical leave of absence. (Diguilio Dep. at 58; Plaintiff Dep. at 122-23, 170-72).

**C.    Labor Relations' Policies and Procedures for FMLA**

13. At all relevant times, Marsha McKeon ("McKeon") worked as a contract employee

through Manpower in Labor Relations as Human Resources Coordinator.
(McKeon Dep. at 9).

14.    As a Human Resources Coordinator, McKeon was responsible for the
administration of Ford employment policies to bargaining unit employees,
including policies relating to FMLA.  (McKeon Dep. at 21-23).

15.    FMLA leave and personal medical leave involve two different processes.  For
example, an employee can initiate and open a personal medical leave of absence
directly with the Clinic, but an employee requesting FMLA leave must generally
go through Labor Relations[2] to complete an application.  (Diguilio Dep. at 17, 19).
No application is completed with Labor Relations for a medical leave of absence,
and the application for FMLA is separate from the Form 5166 submitted for
medical certification.  (McKeon Dep. at 23, 34).

16.    Only Labor Relations – not the Clinic – determines whether an employee is
eligible for FMLA, which includes making sure the employee has 1,250 hours and
has worked at least one year.  If Labor Relations determines that the employee is
eligible for FMLA, he or she has fifteen days to return the Form 5166, completed
by the employee's health care provider, to the Clinic.  (McKeon Dep. at 22-23, 27,
79; Diguilio Dep. at 17, 21-22, 31-32).

---

[2] It appears from Diguilio's testimony, however, that there are situations in which an
employee who is FMLA-qualifying may inadvertently go to the Clinic first.  (*See* Diguilio Dep.
at 19 ("Q: If an individual is seeking a medical leave of absence, whether or not it's FMLA
qualifying, do they generally  – are they to come to you first?  A: Yes.").

17.   The Clinic's administration of the FMLA process is also different from its administration of a medical leave of absence.  After an employee first applies for FMLA through Labor Relations, if he or she is eligible, the Plant physician reviews the medical documentation and approves or denies the FMLA leave based on the documentation provided.  If the leave is approved, Diguilio places the medical documentation with the appropriate calendars to ensure that FMLA guidelines are followed.  (Diguilio Dep. at 9, 17).  In contrast, if an employee applies for a medical leave of absence through the Clinic, the employee takes his or her medical documentation to his or her personal physician, who determines whether the employee is eligible for a medical leave of absence.  If the employee is found to be eligible, the Clinic takes the medical documentation and files it with the employee's medical leave package.  The Plant physician does not review the paperwork.  (Diguilio Dep. at 31-32).

### D.   Plaintiff's Medical Leave from August 8-28, 2006

18.   On August 11, 2006, Plaintiff went to the Clinic and filled out a form entitled Request for Medical Leave of Absence.  Plaintiff's stated reason for her leave at that time was "illness."  (Defendants' Ex. 15).

19.   The Clinic gave Plaintiff a Form 5166, which contains a box near the top of the front page that reads: "Family & Medical Leave Act (FMLA) . . . Requested ☐ YES  ☐ NO."  (Defendants' Ex. 16).  Plaintiff's Form 5166 was pre-stamped "NO."  (Diguilio Dep. at 30).

20.    Plaintiff testified that she did not feel like she had the opportunity to request

FMLA leave because the "Requested" box was pre-stamped "NO."  (Plaintiff Dep.

at 122) ("A: Instead of having the [Form 5166] premarked, then I would have been

made aware of it on whether I had a choice or not.  I felt like I didn't have a choice

because it's premarked.").

21.    On August 21, 2006, Plaintiff returned the Form 5166 to the Clinic.  Plaintiff's

Form 5166 was completed by a nurse practitioner, Kelly Burrough ("Nurse

Burrough"), from the office of Dr. Joyce Bilby ("Dr. Bilby"), Plaintiff's primary

care physician.  (Defendants' Ex. 16).

22.    Plaintiff was granted medical leave from August 8-28, 2006, due to "stress."

Nurse Burrough indicated Plaintiff was to return to work without restrictions on

August 29, 2006.  (Defendants' Ex. 16).

        **E.      Five-Day Notice Policy**

23.    The seniority policy in the CBA between the UAW and Ford reads, in pertinent

part:

**Section 5.  Loss of Seniority**

Seniority shall be broken for the following reasons:

    4.      **(Failure to Report)**

            If the employee does not, within five (5) working days
            (excluding Saturdays, Sundays and Holidays) after notice to
            report has been sent to him/her, either report for work or give
            a satisfactory reason for his/her absence, unless it is not
            possible for him/her to comply with either of these

7

requirements; and provided at least ten (10) working days have elapsed since his/her last day worked.

\*   \*   \*

In cases where conditional or approved medical leaves have expired, the Company may send a notice to report.

Such notice shall be sent by registered mail to the employee's last known address according to the Company's records, and except in cases of recall, the notice shall be substantially in the form set forth in Appendix B\*, attached.  The date on the notice shall be the same date the Post Office receives the notice for mailing.

Disputes as to the Company's failure to observe the procedural requirements of this provision, (e.g., timeliness of notice and transmittal to proper address) and the reasonableness of the employee's failure to respond to a notice where his period of absence can be justified are subject to the regular Grievance Procedure.

(Defendants' Ex. 17).

24.    The Five-Day Notice reads in pertinent part:

## APPENDIX B
## FIVE-DAY NOTICE

Our records show that it has been five or more working days since you last worked.  If you do not, within 5 working days (excluding Saturdays, Sundays and Holidays) from the above date, either report to the Employment Office for work or give a satisfactory reason for your absence to the Employment Office in writing or by telephone\*, your employment will be terminated and you will lose your seniority (unless it is impossible for you to comply with the above).  If you are unable to work because of illness or injury, and so report to the Employment Office within the time stated above, you will be granted a sick leave of absence to cover the period of your disability upon presenting satisfactory evidence thereof.

8

     \*     Request call-in code number.

(Defendants' Ex. 18).

25.    The Five-Day Notice policy is a contractual termination pursuant to the CBA.  As

in 2006, the Five-Day Notice policy is currently applied to all hourly employees

who have failed to report to work for five consecutive days or who failed to report

to work after the expiration of a medical leave of absence.  (Affidavit of Rachel

Loveman ("Loveman Aff.") ¶ 23).

26.    When an employee is on an approved medical leave of absence, a Five-Day Notice

can be sent out to an employee the day after the leave expires.  (McKeon Dep. at

56-58); Deposition of Jim Lewis ("Lewis Dep.") at 19-20).

27.    The Medical Leave of Absence policy found in Section 30 of the CBA reads in

pertinent part:

> **Section 30.  Medical Leaves of Absence**
> An employee who is unable to work because of injury or
> illness, and who furnishes satisfactory evidence thereof, shall
> be granted an automatic sick leave of absence covering the
> period of such disability, subject to the provisions of Section
> 5 of this Article.

(Defendants' Ex. 17).

28.    Labor Relations requires an AWOL employee to submit a Form 5166 to extend an

expired medical leave after a Five-Day Notice has been sent to that employee.

(Diguilio Dep. at 77).  However, Ms. Diguilio testified that the Company has

accepted a doctor's note to extend a medical leave of absence even after a five-day

9

quit notice has been sent to an employee.  (Diguilio Dep. at 78).

**F.      Plaintiff's Treatment by Dr. James Shoot**

29.    Dr. Bilby's office referred Plaintiff to Dr. James Shoot ("Dr. Shoot"), a

psychiatrist, while Plaintiff was on medical leave.  Plaintiff's initial appointment

with Dr. Shoot occurred on August 29, 2006.  (Plaintiff Dep. at 158).

30.    Dr. Shoot noted Plaintiff's presenting history as encompassing numerous personal

losses, including her husband's criminal sentencing and a car accident, and being

overwhelmed with the demands at work and home.  (Defendants' Ex. 21).

31.    Plaintiff talked to Dr. Shoot in a counseling session for about an hour.  Dr. Shoot

diagnosed Plaintiff with Depression Disorder and Musculoskeletal Pain.  (Plaintiff

Dep. at 158; Defendants' Ex. 21).

32.    Dr. Shoot discontinued Plaintiff's use of Prozac and prescribed Zoloft and

Klonopin for her.  (Defendants' Ex. 21).

33.    The remainder of Plaintiff's treatment plan was to rest and return to work on

September 16, 2006.  Dr. Shoot's records indicate that he wanted to see Plaintiff

before she returned to work.  (Defendants' Ex. 21; *see also* Plaintiff Dep. at 159).

**G.      Plaintiff's Contact with the Clinic**

34.    On or around August 30, 2006, Plaintiff spoke with Diguilio and informed her that

her doctor had extended her leave to September 16, 2006.  Diguilio told Plaintiff to

come pick up a Form 5166 for her health care provider to complete.  (Plaintiff

Dep. at 131, 134-35; Defendants' Ex. 27).

35.    Plaintiff alleges that she subsequently spoke on the telephone with a male nurse in the Clinic, but she does not recall his name.  Plaintiff had not picked up the Form 5166 when she made the call.  She told the male nurse that she could not get in to see her doctor until September 11, 2006, and he replied, "Just get the paperwork in as soon as possible."  (Plaintiff Dep. at 148, 166).

### H.    McKeon Sends Plaintiff a Five-Day Notice

36.    Because Plaintiff did not return to work on August 29, 2006, McKeon sent a Five-Day Notice to Plaintiff at her last known address via certified mail, pursuant to Section 5 of the CBA – Loss of Seniority, on August 31, 2006.  In the Five-Day Notice, Plaintiff was told to return to work within five days, excluding holidays or weekends, or to provide verification by one of the following alternatives, if Plaintiff's absence was caused by an illness or disability:

> (1) report in person for referral to our Company Medical Section for their opinion of your expected date of return to work; (2) mail the [C]ompany the enclosed form which should be completed by your physician and should indicate a tentative date for your return to work; or (3) telephone to inform the Company of your condition.*
> *If you respond by telephone, request a call-in code number.

(McKeon Dep. at 54; Defendants' Ex. 25).

37.    Plaintiff received the postal notices for the certified Five-Day Notice sent by McKeon.  (Plaintiff Dep. at 198).

### I.    Events Following the Issuance of the Five-Day Notice

38.    On September 6, 2006, at 9:32 p.m., Plaintiff went to the Clinic.  According to

Plaintiff, she signed in, spoke with Irene Rice ("Rice"), and showed her a note from Dr. Shoot.  (Plaintiff Dep. at 139-42, 149-50).

39.   Rice gave Plaintiff the Form 5166 left by Diguilio.  Plaintiff left the Clinic with Dr. Shoot's note in her hand.  (Plaintiff Dep. at 143).

40.   Rice was the only person in the Clinic who Plaintiff spoke to on September 6, 2006, and her conversation with Rice was very limited.  She did not describe her condition, request an extension, or mention FMLA leave.  (Plaintiff Dep. at 141; Defendants' Ex. 28).

41.   Plaintiff had previously scheduled her next appointment with Dr. Shoot for September 15, 2006.  Plaintiff knew she needed to return the Form 5166 to the Clinic as soon as possible, so she moved the appointment to the first appointment Dr. Shoot had available, which was on September 11, 2006.  (Plaintiff Dep. at 159-60).

42.   When Dr. Shoot saw Plaintiff on September 11, 2006, the diagnosis of Depression Disorder remained unchanged.  Dr. Shoot told Plaintiff to continue taking the prescribed medication but did not prescribe any additional treatment.  (Defendants' Ex. 24).  Plaintiff testified that Dr. Shoot wanted to see her again, but that she did not do so because she lost her medical insurance as a result of her termination. Plaintiff Dep. at 161-62).

43.   On September 11, 2006, McKeon completed a Ten Day Quit Check List concerning Plaintiff.  The Ten Day Quit Check List is a form document used by

12

the Human Resources Department to process terminations for hourly employees who have been issued a Five-Day Notice.  (McKeon Dep. at 56, 60; Defendants' Ex. 26; Diguilio Dep. at 74-75; Lewis Dep. at 32-36).

44.     After McKeon completed the Ten Day Quit Check List, Plaintiff was terminated for failing to respond to the Five-Day Notice.  (Defendants' Ex. 26).

### J.     Events Following Plaintiff's Termination

45.     On September 12, 2006, Plaintiff called McKeon, stating that she heard from a co-worker that she was terminated.  McKeon told Plaintiff that her medical leave had expired since she had failed to provide proper documentation, and confirmed that Plaintiff had been terminated.  (McKeon Dep. at 71-72; Defendants' Ex. 31).

46.     Plaintiff did not pick up the Five-Day Notice sent by McKeon until September 12, 2006, but she admits she knew she had a certified letter waiting for her to pick up. A copy of the Five-Day Notice was also sent via certified mail to Plaintiff from her Union President, Jim Lewis ("Lewis"), on August 31, 2006.  Plaintiff did not pick up the certified letter sent by Lewis.  (Plaintiff Dep. at 197; Lewis Dep. at 30; Defendants' Ex. 32).

47.     Plaintiff submitted medical documentation to the Clinic on September 12, 2006 – one day after her termination.  (Plaintiff Dep. at 167-68; Defendants' Ex. 30).

48.     On September 13, 2006, the UAW filed Grievance No. PM1008 on behalf of Plaintiff.  (Lewis Dep. at 11-12).

49.     On May 18, 2007, the UAW withdrew Plaintiff's grievance.  (Defendants' Ex. 33).

50.    On December 19, 2006, Plaintiff filed the present Complaint.  (Docket # 1).

## II.    Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "[T]he mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Id*. at 247–48.

In deciding whether a genuine issue of material fact exists, the court views the evidence and draws all inferences in favor of the nonmoving party.  *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).  However, when a summary judgment motion is made and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings but "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

## III.    Discussion

Plaintiff alleges that Defendants interfered with the exercise of her rights under the

FMLA "when they failed to reinstate her after her leave and terminated her employment." (Plaintiff's Response at 20).

The FMLA grants eligible employees the right to take leave of up to twelve work weeks in any twelve-month period where the employee has a serious health condition that renders her unable to perform the functions of her position. 29 U.S.C. § 2612(a). Upon return from leave, an employee must be returned to her position held before leave or an equivalent position. 29 U.S.C. § 2614(a)(1). To protect these rights, the FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by [the Act]." 29 C.F.R. § 2615(a)(1). A plaintiff asserting an interference claim must establish the following five elements: (1) she was eligible for protection under the FMLA; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take FMLA leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Ridings v. Riverside Medical Clinic*, – F.3d – , 2008 WL 3271916, at *3 (7th Cir. 2008); *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). As Plaintiff is asserting a substantive rights claim (as opposed to a discrimination/retaliation claim), Defendants' intent is immaterial. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016-17 (7th Cir. 2000). Elements three, four and five are in dispute.

### A.    Plaintiff's Initial Leave Request From August 8-28, 2006

In analyzing Plaintiff's claim, the court will begin its discussion with Plaintiff's initial leave request to determine whether her leave request was FMLA-qualifying. This

finding is critical to the court's resolution of Plaintiff's second leave request, which ultimately resulted in her termination.

.        **1.      Whether Plaintiff Was Entitled to FMLA Leave**

The parties first dispute whether Plaintiff had a serious health condition entitling her to FMLA leave.  If Plaintiff did not, she is not entitled to the FMLA's protections.

The FMLA defines "serious health condition" to include "an illness . . . that involves . . . continuing treatment by a health care provider."  29 U.S.C. § 2611(11)(B). The regulations promulgated by the Secretary of Labor further define "continuing treatment by a health care provider" to include, in relevant part:

> (a)(2)  *Continuing treatment* by a health care provider.  A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (i)      A period of incapacity (i.e., inability to work . . . ) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A)      Treatment two or more times by a health care provider . . . ; or
>
> (B)      Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the heath care provider.
>
> *      *      *
>
> (b)      . . . Under paragraph (a)(2)(i)(B), a regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) . . .

29 C.F.R. § 825.114(a)(2)(i).

The evidence in this case consists of Plaintiff's Form 5166, Plaintiff's deposition

testimony, Plaintiff's affidavit, and Dr. Shoot's office notes. Plaintiff's Form 5166

reflects a diagnosis of "stress" – more specifically, insomnia, anorexia disorder, and

depression – and indicates that Plaintiff had first been treated for these issues by her

health care provider, Dr. Bilby, on October 7, 2004. In addition, section two of Plaintiff's

Form 5166[3] tracks the regulatory language of 29 C.F.R. § 825.114(a)(2)(i) (". . . treatment

by a health care provider on at least one occasion which results in a regimen of continuing

treatment . . ."). Plaintiff supports the information contained in her Form 5166 with

evidence that Dr. Bilby had been treating her for depression[4] and depression-related

---

[3] Notably, section two of the Form 5166, reads, in pertinent part:

2.      Please check the applicable category which describes the reason for the
        employee's absence:

_____   B.      Incapacity of more than three consecutive calendar days (including
                any subsequent treatment or period of Incapacity relating to the
                same condition), that also involves:

                                        * * *

                ☐ treatment by a health care provider on at least one occasion
                which results in a regimen of continuing treatment (e.g.,
                prescription medication, physical therapy or other treatments
                requiring the direction of a health care provider. This does not
                include over-the-counter medications, simple bed rest, etc.)

See 29 C.F.R. § 825.114(a)(2)(i).

[4] Defendants argue that Dr. Shoot's diagnosis of depression is "new and different" from
Dr. Bilby's diagnosis of "stress." (Defendants' Reply at 21). Viewing the evidence in the light
most favorable to Plaintiff, the court finds Defendants' argument is not persuasive. Plaintiff's

issues with Prozac, and that Dr. Bilby referred her to Dr. Shoot, a psychiatrist, during her initial period of leave, for further diagnosis and treatment. (*See* Defendants' Ex. 21; Affidavit of Letecia Brown ¶ 10).  Dr. Shoot diagnosed Plaintiff with Depression Disorder and Musculoskeletal Pain, changed Plaintiff's medication to Zoloft and Klonopin, and requested to see Plaintiff again for a follow-up session.  Plaintiff testified that she would have seen Dr. Shoot again were it not for the fact that she lost her health insurance as a result of her termination.  (Plaintiff Dep. at 161-62).

The court finds these facts, taken in the light most favorable to the Plaintiff, show that Plaintiff had been seen on one or more occasions by a health care provider "which result[ed] in a regimen of continuing treatment" – i.e., a course of prescription anti-depressant medications.  The court therefore finds that Plaintiff has successfully raised a genuine issue of material fact as to whether she suffered from a serious health condition during her leave for the period August 8-28, 2006.

## 2.    Whether Plaintiff Provided Adequate Notice

The parties next dispute whether Plaintiff gave adequate notice to Defendants of her need for FMLA leave for the period of August 8-28, 2006.  This issue is significant, for if an employee fails to give her employer adequate notice, the employer may deny leave even if the employee has a serious health condition.  *Id*. at 311 (citing *Aubuchon*,

---

Form 5166 specifically noted Plaintiff's depression.  Further, Plaintiff testified, and Dr. Shoot's records confirm, that Dr. Bilby prescribed Plaintiff Prozac, a well-known anti-depressant medication either during or before (the record is not clear) her August 8-28, 2006 leave.

359 F.3d at 951).

An employee provides adequate notice of her intent to take FMLA leave by stating "'a qualifying reason for the needed leave.'" *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 310 (7th Cir. 2006) (quoting 29 C.F.R. § 825.208(a)(2)). "An employee need not expressly mention the FMLA or otherwise invoke any of its provisions when requesting leave." *Id.*; 29 C.F.R. § 825.303(b). "In fact, an employee can be completely ignorant of the benefits conferred by the Act." *Stoops v. One Call Comm., Inc.*, 141 F.3d 309, 312 (7th Cir. 1998). "The employee's notice obligation is satisfied so long as [s]he provides information sufficient to show that [s]he *likely* has an FMLA qualifying condition." *Burnett*, 472 F.3d at 479 (emphasis in original) (citing *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004) ("[T]he employee's duty is merely to place the employer on notice of a probable basis for FMLA leave."); *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001) ("[E]mployers . . . are entitled to the sort of notice that will inform them . . . that the FMLA may apply."). Although the issue of notice is a fact-specific inquiry, the Seventh Circuit has held that "an employee's bare assertion that he is 'sick' is insufficient," as a simple "reference to being 'sick'" fails to put the employer on notice that the condition could be serious or that "the FMLA otherwise could be applicable." *Burnett*, 472 F.3d at 479 (citing *Phillips*, 450 F.3d at 312); *Collins v. NTN-Bower Corp.*, 272 F.3d 1007, 1008 (7th Cir. 2001) ("'Sick' does not imply 'a serious health condition'").

With respect to Plaintiff's initial leave request, the evidence reflects that Plaintiff

19

went to the Clinic on August 11, 2006, requesting a leave of absence due to "illness." (Defendants' Ex. 15).  There is no testimony or documentary evidence advanced by the Plaintiff as to the specific conversation she had with the Clinic employee at the time of her request.  For example, there is no evidence as to whether she informed the Clinic that she was under the continuing care of a doctor, no evidence that she held a doctor's note in her hand while explaining her condition, nor evidence otherwise indicating that what she suffered from may be a "serious health condition" within the meaning of the FMLA and its regulations.  Given the case law on this issue, Plaintiff's request for leave due to an "illness" is insufficient notice of an intent to take FMLA leave as a matter of law. *Burnett*, 472 F.3d at 479; *Collins*,, 272 F.3d at 1008.  The court therefore finds the fact that the Clinic required her to fill out a non-FMLA 5166 Form at the commencement of her leave did not interfere with Plaintiff's FMLA rights.

The discussion does not end here, however.  As required by the Clinic, Plaintiff obtained a Form 5166 for her personal physician to fill out.  Plaintiff's Form 5166 states in explicit terms that the FMLA was not "requested." (*See* Defendants' Ex. 16).  In her deposition, Plaintiff testified that she did not feel she had the opportunity to request FMLA because the Form 5166 she received from the Clinic was pre-marked "NO." (Plaintiff Dep. at 122).  At any rate, the Form 5166 was filled out by her physician's nurse practitioner, Nurse Burrough, who indicated, as previously stated, that Plaintiff was in need of medical leave from August 8-28, 2006, due to stress and, more specifically, depression and depression-related conditions, and that Dr. Bilby had been treating

20

Plaintiff for these conditions since October 10, 2004.  Moreover, as noted above, section

2 of Plaintiff's Form 5166 tracks the regulatory definition of a serious health condition.

*See* 29 C.F.R. § 825.114(a)(2)(i).  Plaintiff returned this document to Defendants on

August 23, 2006, during Plaintiff's initial leave period.  Because this document included

references to her continuing treatment by Dr. Bilby for insomnia, anorexia, and

depression – conditions which could possibly meet the definition of "serious health

condition" – the court finds a material issue of fact as to whether Plaintiff's initial Form

5166 provided adequate notice to Defendants of Plaintiff's need for FMLA leave.

### B.      Plaintiff's Second "Leave Request"

Having found an issue of fact as to whether her initial request was for FMLA-

qualifying leave, the court must next address whether Plaintiff provided Ford with

sufficient notice of her need to extend her leave.

When the need for leave is not foreseeable, as is the case here, "an employee

should give notice to the employer of the need for FMLA leave as soon as practicable

under the facts and circumstances of the particular case."  29 C.F.R. § 825.303(a).  In

such a case, "[i]t is expected that an employee will give notice to the employer within no

more than one or two working days of learning of the need for leave, except in

extraordinary circumstances where such notice is not feasible."  *Id.*

In this case, the evidence reflects that Plaintiff called the Clinic on August 30,

2006 – a day after her initial leave expired – and informed Diguilio that she had seen her

doctor who extended her medical leave to September 16, 2006.  As the court found a

21

genuine issue of material fact as to whether Plaintiff's initial leave request was FMLA-qualifying, the court finds that Plaintiff's phone call to the Clinic – which occurred within two working days of her expired leave – raises a genuine issue of material fact as to whether Plaintiff gave adequate notice of her need for an extension of her FMLA leave.

The final issue the court must address is whether Plaintiff filed her Form 5166 in a timely manner.  The regulations allow the employer to request medical certification where the employee seeks to extend the original period of medical leave.  29 C.F.R. § 308(c)(1).  "The employee must provide the requested recertification to the employer within the time frame requested by the employer (which must allow 15 calendar days after the employer's request), unless it is not practicable under the circumstances."  29 C.F.R. § 825.308(c)(3)(d).  Here, Plaintiff filed her Form 5166 on September 12, 2006, within the 15-day time frame contemplated by the regulations, and one day after her official termination.  The court must find, therefore, a genuine issue of material fact as to whether Defendants interfered with the exercise of her FMLA rights by terminating her from their employ.

**IV.    Conclusion**

The court is mindful of Defendants' position in this case.  Plaintiff did not follow Defendants' medical leave of absence policies.  However, the key issue in this case is not whether Plaintiff knew whether she was on a medical leave of absence and not on FMLA leave, or even whether she specifically requested a medical leave of absence, but whether Plaintiff was entitled to the protections of the FMLA due to a serious health condition and

was denied the same by the Defendants.  Thus, the issues in this case were whether (1)

Plaintiff had a serious health condition entitling her to FMLA leave; and (2) whether

Plaintiff gave Defendants sufficient notice of her intent to take FMLA leave.  The

evidence in this case is sufficient to raise genuine issues of material fact such that the

court simply cannot resolve on summary judgment.  Accordingly, although this motion

was a close call, the court **DENIES** Defendants' Motion for Summary Judgment (Docket

# 76).


**SO ORDERED** this 24th  day of November 2008.


_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

A. Richard Blaiklock
LEWIS & WAGNER
rblaiklock@lewiswagner.com

Stephanie Lynn Cassman
LEWIS WAGNER LLP
scassman@lewiswagner.com

Denise K. LaRue
HASKIN LAUTER & LARUE
dlarue@hlllaw.com

Ericka  McCaskill
BERKOWITZ OLIVER WILLIAMS SHAW & EISENBRANDT LLP
emccaskill@bowse-law.com

Timothy S. Millman
BERKOWITZ OLIVER WILLIAMS SHAW & EISENBRANDT LLP
tmillman@bowse-law.com

Bradley L. Wilson
HASKIN LAUTER  & LARUE
bwilson@hlllaw.com